IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PAUL F. JENNINGS,<br><br>                      Petitioner,<br><br>vs.<br><br>AUDREY K. KING, Acting Executive Director, Coalinga State Hospital,<br><br>                      Respondent. | No. 2:14-cv-00056-JKS<br><br>MEMORANDUM DECISION |

Paul F. Jennings, a civil detainee proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.[1]  Jennings is in California state custody and involuntarily civilly committed to the Coalinga State Hospital as a sexually violent predator ("SVP").  Respondent has answered, and Jennings has replied.

---

[1]        A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. §§ 2241(c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375, n.7 (2000).  The fact that Jennings is challenging his civil commitment for mental illness rather than his underlying conviction does not change the outcome as civil commitments are typically challenged in habeas proceedings.  *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) (stating that a state court order of civil commitment satisfies § 2254's "in custody" requirement).

A person in state custody may challenge his confinement under 28 U.S.C. § 2241 or 28 U.S.C. § 2254.  However, a § 2241 petition generally challenges the execution of a sentence such as the "manner, location, or condition" of confinement. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000).  Because Leonard challenges the term of his confinement rather than the conditions surrounding it, he has properly brought his claim under § 2254.  *See Huftile v. Miccio–Fonseca*, 410 F.3d 1136, 1139-40 (9th Cir. 2005) ("[D]etainees under an involuntary civil commitment scheme . . . may use a § 2254 habeas petition to challenge a term of confinement.").

I.  BACKGROUND/PRIOR PROCEEDINGS

On September 22, 2010, a Shasta County Superior Court jury found Jennings to be a

sexually violent predator under the Sexually Violent Predators Act ("SVPA"), CAL. WELF. &

INST. CODE § 6600 et seq., and the court civilly committed him to the California Department of

Mental Health ("DMH") for "appropriate treatment and confinement, for an indeterminate

commitment . . . until further order of the court."  On direct appeal, the California Court of

Appeal summarized the following evidence presented at Jennings' civil commitment trial:

FACTS

The trial primarily consisted of expert testimony by the People and defense.  Two experts testified for the People and two experts testified for the defense.  [Jennings] was called as a witness by the People.

*People's Expert Evaluations*

*Dr. Matosich*

Dr. Christopher Matosich, a psychologist under contract with the DMH to perform SVP evaluations, evaluated [Jennings] in February 2010.  He reviewed materials related to [Jennings], including police reports, probation officers' reports, as well as ongoing psychiatric and medical evaluations.  [Jennings] declined a full clinical interview.

Dr. Matosich described [Jennings'] qualifying offenses under the SVPA.  In 1984, [Jennings] sustained two convictions for a lewd act upon a child under the age of 14 (Pen. Code, § 288, subd. (a)) and was sentenced to six years in state prison.  One conviction involved an eight-year-old boy who was molested after [Jennings] posed as a medical expert and said he was going to check the boy's ears.  Regarding the second conviction, [Jennings] pulled another eight-year-old boy's pants down and molested him; on two other occasions [Jennings] pulled down his own pants and had the boy touch his erect penis.

In 1995, [Jennings] received a third conviction for a lewd act upon a child under the age of 14 and was sentenced to 12 years in state prison.  [Jennings] employed young males to work for him on his property and in his house, and invited the boys to take showers after getting dirty.  He asked one of the boys, an 11-year-old, to lie down on the bed and put a condom and jelly on his penis.  [Jennings] then touched the boy's penis 10 or more times.  This was done by [Jennings] in the form of a medical examination. [Jennings] was not related to any of his victims.

Dr. Matosich diagnosed [Jennings] with pedophilia, a chronic, lifelong condition which does not go into remission.  Pedophilia is a qualifying medical disorder under the SVPA.  The diagnosis was current even though there had not been any recent episodes.

2

Dr. Matosich also considered [Jennings'] refusal to acknowledge his pedophilia and participate in any treatment.  Resistance to treatment is associated with risk of recidivism.  [Jennings'] belief that he does not have the disorder complicates his access to treatment.  Dr. Matosich opined that the disorder is "an ongoing life condition with no degree of behavioral control."

Dr. Matosich concluded [Jennings] was likely to reoffend if released, and qualified as an SVP.  His opinion was based on a two-pronged approach to determine the overall likelihood of sexual recidivism.  Static and dynamic factors are used.  Static factors are those factors not subject to change.  Dynamic factors are those factors capable of changing, especially through treatment.

The static factors are reflected in actuarial instruments used to predict the likelihood of reoffending in the future (these instruments are referred to as Static-99, Static 99-R, Static-2002, and Static-2002-R).  [Jennings] scored six on the Static-99, placing him at a high risk of reoffending.  According to [Jennings'] score, this put him "in the range of 13.4 to 27.7 percent at risk of sexual recidivism" over five years and "16.7 percent to 37.3 percent" over 10 years.

[Jennings] was 62 at the time of the trial.  The risk of offending declines after the age of 60, and, under the Static-99-R (a revised instrument to accommodate the effect of age), [Jennings'] age automatically reduced his score from six to three, placing him "in the low moderate category" for risk of sexual recidivism.  Using the Static-2002 and 2002-R instruments (which are similar to the Static-99 and 99-R instruments with some different factors), [Jennings'] age reduced his score from six to three.

Dr. Matosich found several dynamic factors relevant to [Jennings'] risk of reoffending.  [Jennings] never had a meaningful or long-term relationship.  He also displayed a severe degree of sexual deviancy, as shown by the number of victims and by reoffending after he was punished.  [Jennings] showed a predatory relationship with his victims by establishing relationships with the boys in order to obtain sexual gratification through them.  He also knew his behavior was wrong and illegal, as he told his second 1984 victim not to tell anyone.

Dr. Matosich concluded [Jennings] was likely to reoffend based on a review of the static factors, his pattern of behavior, his failure at previous treatment, the degree of sexual deviancy, his ongoing refusal to engage in treatment, and the severity of his pedophilia.  He opined that [Jennings] could not be successfully treated in the community.

*Dr. Alumbaugh*

Dr. Mary Jane Alumbaugh was a psychologist contracted by DMH to perform SVP examinations.  She evaluated [Jennings] in 2007, with updates in 2008 and 2009, and an addendum in 2010.  She interviewed [Jennings] in 2007 and 2008, but he declined an interview in 2009.

According to Dr. Alumbaugh, "a hallmark of pedophilia is an enduring kind of pervasive attraction to a sexually deviant form of arousal in the case of a child."  [Jennings] exhibited these symptoms, as shown by his continuing acts of molestation even after being punished for the 1984 offenses.  With respect to the 1995 conviction, [Jennings]

had a lot of boys around the house and he was spending a lot of time with them, interacting with them on an inappropriate level. With respect to the 1984 incidents, [Jennings] allegedly sodomized one of the victims.

[Jennings] had a pattern of claiming medical expertise. In 1995, he told the boys he was a retired medical school professor qualified to conduct exams. Equipment for conducting medical examinations was found in his home in 1984, along with records dating back to 1974 referring to boys' names, ages, weights, heights, and the measurements of various body parts, including their penises and testicles.

Dr. Alumbaugh diagnosed [Jennings] with pedophilia. Although sexual recidivism significantly declines with age, [Jennings] was still a pedophile who continued to insist he merely performed medical procedures on his victims.

Regarding his risk of reoffending, [Jennings] was initially assessed as high risk, but his score dropped three points because of his age, putting him in a fairly low category for risk of sexual recidivism. In addition to age, Dr. Alumbaugh factored in health issues associated with old age. [Jennings] had prostate problems, which impairs sexual function. [Jennings] had a hip replacement and was not as mobile as he used to be. While [Jennings] was old and stable enough to come up with a plan to stay out of trouble in the community, he had not developed a sensible plan. [Jennings'] plan of going to China was not practical.[FN2]

FN2. Defendant once consulted for a firm in China.

[Jennings] satisfied the third criteria of the SVPA because he was unwilling to agree to a treatment plan and therefore was not safe to be released at this time. [Jennings] completed the first phase, education, of the five-phase program offered at the hospital. However, he refused to participate in the second phase, relapse prevention. [Jennings] also declared he would not participate in the fifth part of the program, restrictive conditional release, at one point saying death was preferable.

According to Dr. Alumbaugh, the recidivism rates for child molesters does not begin to decline until their late 50s, while recidivism rates for rapists dramatically decline "after 40-ish." Actuarial instruments like the Static-99 do not differentiate between child molesters and rapists when they estimate recidivism rates. In forming her opinion that [Jennings] was likely to reoffend, Dr. Alumbaugh also considered new studies related to the effect of aging on recidivism.

*Defense Expert Evaluations*

*Dr. Podboy*

Dr. John Podboy, a psychologist retained by the defense, interviewed [Jennings] in March 2008 and reviewed the relevant records. Dr. Podboy concluded [Jennings] did not meet the criteria for an SVP because he did not qualify for a diagnosis of pedophilia. In support of his opinion, Dr. Podboy noted pedophiles seek visual stimuli related to their target group and their obsession with finding such stimuli creates problems for the staff, and [Jennings] did not display such behaviors in the hospital.

[Jennings'] refusal to participate in treatment was not evidence of pedophilia, and the success rate of the treatment program was not very good.  Dr. Podboy believed [Jennings'] risk of reoffending was "very low" if he was released to the community.

*Dr. Donaldson*

Defense psychologist Dr. Ted Donaldson testified that [Jennings] did not meet all of the criteria under the SVPA, because there was insufficient evidence to support a diagnosis of pedophilia.  Dr. Donaldson could not reject the "alternate explanation" for the prior molestations as opportunistic rather than driven by compulsion like pedophilia. [Jennings] showed no signs of a sexual interest in children since his arrest for the last offense, and refusing to engage in treatment or denying the condition was not evidence of pedophilia.  As there was no evidence [Jennings] ever tried to control his behavior, there is "grossly insufficient evidence for a diagnosable mental disorder" as defined by the SVPA.

Dr. Donaldson opined that [Jennings'] risk of reoffending was "very low." Factoring in his age and Static-99 scores, he estimated [Jennings'] risk of recidivism at less than five percent.

*People v. Jennings*, No. C066227, 2012 WL 183400, at *1-4 (Cal. Ct. App. Jan. 24, 2012).

Through counsel, Leonard appealed the superior court's commitment order, arguing that there was insufficient evidence showing that he met the criteria for commitment under the SVPA and that his indeterminate commitment violates various provisions of the federal constitution, including due process, ex post facto, and equal protection.  On June 24, 2012, the Court of Appeal issued an unpublished, reasoned opinion, rejecting Jennings' challenge to the sufficiency of the evidence and holding that the California Supreme Court's decision in *People v. McKee*, 223 P.3d 566 (Cal. 2010) (*McKee I*), precluded his due process and ex post facto claims. *Jennings*, 2012 WL 183400, at 4-6.  In response to Jennings' claim that his indeterminate sentence violates his right to equal protection, however, the appellate court remanded the case to the trial court for consideration of the claim in light of further proceedings in *McKee*.  *Id.* at *6. The California Court of Appeal ordered that, "[t]o avoid unnecessary multiplicity of proceedings, resolution of the equal protection issue should await resolution of the proceedings

on remand in *McKee*, including any resulting proceedings in the Court of Appeal or California Supreme Court." *Id.* (footnote omitted).  Jennings did not petition for review in the California Supreme Court from the Court of Appeal's opinion in that case.

On July 24, 2012, the California Court of Appeal issued a published opinion in *People v. McKee*, 144 Cal. Rptr. 3d 308 (Cal. Ct. App. 2012) (*McKee II*), affirming the superior court's conclusion, following an evidentiary hearing, that the indeterminate term provisions of California's SVPA do not violate principles of equal protection.  The California Supreme Court denied review on October 10, 2012.  *Id.*

On December 14, 2012, the trial court on remand reissued its previous order committing Jennings for an indeterminate term to the custody of the California Department of State Hospitals.  Jennings appealed from that judgment to the California Court of Appeal, arguing that *McKee II* was wrongly decided and that his right to equal protection was violated by the imposition of an indeterminate term of commitment under the SVPA.  On October 7, 2013, the Court of Appeal issued a reasoned, unpublished opinion rejecting Jennings' equal protection claim and affirming the order committing Jennings to the Department of State Hospital for an indeterminate term.  *People v. Jennings*, No. C072779, 2013 WL 5514010, *2 (Cal. Ct. App. Oct. 7, 2013).  Jennings sought review in the California Supreme Court, which was summarily denied on December 18, 2013.

On January 9, 2014, Jennings commenced this action, in which he again challenges the September 22, 2010, order of commitment.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Jennings argues that the order of indeterminate commitment violates his constitutional rights to due process and equal protection of the law.

## III.  STANDARD OF REVIEW

The Ninth Circuit has held that habeas petitions challenging state civil commitment proceedings are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Rose v. Mayberg*, 454 F.3d 958, 961 n.3 (9th Cir. 2006).  Under AEDPA, 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams*, 529 U.S. at 406.

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"
*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.     Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To have properly exhausted his state court remedies, Jennings must have presented both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). As Respondent correctly notes, although Jennings raised his due process claim on direct appeal to the California Court of Appeal, he failed to present the claim to the California Supreme Court in a petition for review. Accordingly, Jennings has failed to exhaust this claim, and the Court denies it on that basis.

B.      Merits

In any event, even if Jennings had fully exhausted his due process claim, he still would not be entitled to relief on it.  For the reasons discussed below, the Court also denies relief on the merits of his unexhausted claim.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Similarly, as further discussed below, the Court also finds no merit to the equal protection claim Jennings exhausted in state court.

*Due process*

Jennings claims that the SVPA violates due process by providing for an indeterminate commitment and shifting the burden of proof in commitment proceedings to the committed individual to prove by a preponderance of the evidence that he is not a SVP.

The SVPA provides for the civil commitment of a person found to be "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  CAL. WELF. & INST. CODE § 6600(a)(1).  Persons who are in custody under the jurisdiction of the California Department of Corrections and Rehabilitation are screened prior to their scheduled release from prison and, for those who screen positive, full evaluations are performed by the DMH.  *Id.* § 6601.  If formal commitment proceedings are initiated, the person is entitled to a trial by jury, *id.* § 6603(a), at which the verdict must be unanimous, *id.* § 6600(f), and the burden of proof is beyond a reasonable doubt, *id.* § 6604.

The SVPA originally provided for a two-year term of commitment and two procedures by which an SVP could obtain release. First, former § 6605 required the DMH to submit an annual report with the committing court, following an examination, considering whether the committed person currently met the definition of an SVP and whether unconditional release was appropriate. *See* 1995 Cal. Legis. Serv. Ch. 763 (A.B. 888) (West). Second, the DMH was required to notify the SVP of his or her right to petition the committing court for conditional release under § 6608 and to forward the notification and a waiver of the SVP's right to petition as part of the annual report. *Id.* If the SVP did not waive his or her right to petition, the committing court was required to set a show cause hearing to determine whether the person still met the definition of an SVP. *Id.*

The SVPA, as amended by Proposition 83, now provides for an indeterminate term of commitment. CAL. WELF. & INST. CODE § 6604. The amended SVPA no longer requires the DMH to submit notification and waiver of the SVP's right to petition the committing court under § 6608 as part of their annual report, but the amended SVPA continues to provide two procedures by which an SVP can obtain release. Section 6605 requires the DMH, following an examination, to submit an annual report with the committing court considering "whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." *Id.* §§ 6604.9(a), 6605. The DMH is required to authorize the person to file a petition for conditional release or unconditional discharge where the person's condition has so changed that he no longer meets the definition of an SVP or conditional release is appropriate.

10

*Id.* §§ 6604.9(b), 6605.  Second, under § 6608, a person under commitment as an SVP may unilaterally petition for release, conditional or unconditional, without DMH concurrence.  *Id.* § 6608(a).  The committed person has the burden of proof by a preponderance of the evidence. *Id.* § 6608(i).

The California Court of Appeals rejected Jennings' due process claim as foreclosed by the California Supreme Court's decision in *McKee I*, 223 P.3d 566.  *Jennings*, 2012 WL 1834000, at *5.  Jennings argues in the instant Petition that the California Supreme Court's decision in *McKee I* is contrary to and an unreasonable application of federal law.  In support of his argument, Jennings cites to a decision of the Washington Supreme Court which is no longer good law, *see State v. McCuistion*, 238 P.3d 1147 (Wash. 2010), opinion withdrawn and superceded by *State v. McCuistion*, 275 P.3d 1092 (Wash. 2012) (holding that Washington SVP statute did not violate either substantive or procedural due process), as well as decisions of the Fourth and Fifth Circuits regarding the burden of proof in inapposite criminal proceedings, *see Tennon v. Ricketts*, 642 F.2d 161 (5th Cir. 1981); *Wynn v. Mahoney*, 600 F.2d 448 (4th Cir. 1979).

But Jennings is not entitled to federal habeas relief either because it cannot be said that the California Court of Appeal's rejection of his due process claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d).  The United States Supreme Court has never held that the prosecution must bear the burden of proof at a release hearing initiated by a person who was civilly committed under state law upon a finding beyond a reasonable doubt that the person met the criteria for commitment. In *Addington v. Texas*, 441 U.S. 418, 427 (1979), the Supreme Court stated that the State needed

to show something beyond a preponderance of the evidence to civilly commit an individual. California's SVPA requires in the initial hearing the more stringent burden of proof beyond a reasonable doubt; it is therefore in accord with *Addington*, and *Addington* did not reach the issue of what is required at subsequent civil commitment trials. Nor is there any Supreme Court authority that requires periodic judicial hearings with regard to continued civil commitment or mandates more mechanisms for judicial review than the SVPA provides.

Indeed, the Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346 (1997), further warrants the denial of this claim. In *Hendricks*, the Supreme Court reviewed Kansas' SVPA, which is similar to that of California. The Kansas SVPA "establishe[d] procedures for the civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' [were] likely to engage in 'predatory acts of sexual violence.'" *Id.* at 350 (citation omitted). Under the Kansas statute, a trial was held to make the initial determination as part of the process for committing an individual the State believed to be a sexually violent predator. *See id.* at 352-53. A confined individual was entitled to an annual review by the committing court to determine whether further commitment was necessary. *See id.* The Secretary of Social and Rehabilitative Services also could authorize the individual to petitioner for relief if he or she determines that the individual's condition has so changed that release was appropriate. *See id.* The confined individual could also petition the committing court at any time. *See id.* Upon reviewing these provisions, the Supreme Court upheld the Kansas SVPA, stating that "[w]e have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." *Id.* at 357. The Court did not address the specific procedures for continued confinement or the burden of proof in subsequent proceedings.

In sum, because there is no Supreme Court precedent that controls on the due process claim raised by Jennings in state court and the California SVPA is similar to another state's SVPA which was upheld by the Supreme Court, the California Court of Appeal's decision cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  *See Carey*, 549 U.S. at 77.

   *Equal protection*

Jennings additionally argues that SVPs committed under the SVPA are denied equal treatment in comparison to those determinately committed as mentally disordered offenders ("MDO's") and as not guilty by reason of insanity ("NGI's").

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The Supreme Court has articulated three distinct standards applicable to equal protection analysis: strict scrutiny, heightened scrutiny and rational basis review.  *Id.* at 440-41. The standard to be invoked depends on the nature of the class involved or the interest affected.

In *McKee I*, the California Supreme Court found "some merit" in this contention and remanded the case "to the trial court to determine whether the People . . . can demonstrate the constitutional justification for imposing on SVPs a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment."  223 P.3d at 578, 587.  The Court of Appeal, after independently reviewing the additional evidence presented on remand in the superior court, subsequently concluded:

13

> [T]he People on remand met their burden to present substantial evidence,
> including medical and scientific evidence, justifying the amended Act's disparate
> treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and
> placing on them the burden to prove they should be released).  The People have shown
> that, "notwithstanding the similarities between SVP's and MDO's [and NGI's], the
> former as a class bear a substantially greater risk to society, and that therefore imposing
> on them a greater burden before they can be released from commitment is needed to
> protect society."  The People have shown "that the inherent nature of the SVP's greater
> risk [and unique dangers] to a particularly vulnerable class of victims, such as children";
> and that SVP's have diagnostic and treatment differences from MDO's and NGI's,
> thereby supporting the reasonable perception by the electorate that passed Proposition 83
> that the disparate treatment of SVP's under the amended Act is necessary to further the
> state's compelling interests in public safety and humanely treating the mentally
> disordered.

*McKee II*, 144 Cal. Rptr. 3d at 324 (internal citations omitted).

While Jennings recognizes that the California Court of Appeal's decision in *McKee II* is

fatal to his equal protection claim here, he urges this Court to disregard that authority as

incorrectly decided under federal constitutional law.  But it simply cannot be said that the

appellate court's determination that the disparate treatment between SVPs and MDO's and

NGI's is necessary to further a compelling state interest is objectively unreasonable.  *Williams*,

529 U.S. at 409; *see Seeboth v. Allenby*, No. 12-17062, 2015 WL 3772754,*4-6 (9th Cir. Jun. 18,

2015).  Indeed, the Ninth Circuit very recently considered "whether it was objectively

unreasonable for the state courts to hold that the state legislature had a rational reason to

distinguish between individuals who have been found to be mentally ill and dangerous (MDOs

and NGIs) and individuals who have been found to be mentally ill and *sexually* dangerous

(SVPs)."  *Seeboth*, 2015 WL 3772754, at *5.  It ultimately concluded, "With respect to the

procedural steps in the civil recommitment process that are at issue here, the state court

reasonably concluded that California may make such a distinction."  *Id.*  Accordingly, Jennings

is not entitled to relief on his equal protection claim.

C.      Evidentiary Hearing

        In the alternative, Jennings requests an evidentiary hearing on all claims.  However, he

has failed to specify what evidence he wishes to present for each claim.  A district court may not

hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in

state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of

constitutional law that the Supreme Court has made retroactive to cases on collateral review, or

(b) a factual predicate that could not have been previously discovered through the exercise of

due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and

convincing evidence that, but for constitutional error, no reasonable fact finder would have

found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

        Where the failure to develop the factual basis for the claim in the state court proceedings

is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a

colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293

(1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the

Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on

his factual allegations if: (1) the merits of the factual dispute were not resolved in the state

hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3)

the fact-finding procedure employed by the state court was not adequate to afford a full and fair

hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts

were not adequately developed at the state-court hearing; or (6) for any reason it appears that the

state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Id.* at 670

(quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

As discussed above, Jennings has failed to assert a colorable claim for relief as to any of his claims. Because Jennings does not cite to new laws or underlying facts that were not developed on the record before the state courts with respect to those claims, he has failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Accordingly, Jennings' request for an evidentiary hearing must also be denied.

## V. CONCLUSION AND ORDER

Jennings is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Jennings' request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

16

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 26, 2015.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge

17